IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

OKANG KAREEN ROCHELLE,          )
                                )
            Petitioner,          )
                                )          1:12CV1121
        v.                       )          1:05CR112-1
                                )
UNITED STATES OF AMERICA,        )
                                )
            Respondent.          )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

　　Petitioner Okang Kareen Rochelle, a federal prisoner, filed
a motion (Doc. 189)[1] to vacate, set aside, or correct sentence
pursuant to 28 U.S.C. § 2255.  The government filed a response.
(Doc. 191.)  Petitioner then filed a motion for extension of
time to file a reply (Doc. 194), a reply (Doc. 195), a motion
for leave to exceed page limit (Doc. 196), a supplemental reply
(Doc. 197), a motion to supplement his initial § 2255 motion
(Doc. 198), a supplemental memorandum (Doc. 199), an affidavit
(Doc. 200), a motion to supplement seeking to correct various
grammatical/typographical errors (Doc. 201), and a motion
entitled "Motion for Disclosure of Grand Jury Transcripts" (Doc.
202) along with supporting documents (Doc. 203).  The matter is

---

[1] Unless otherwise noted, this and all further cites to the
record are to the criminal case.

now before the court for a ruling.  See Rule 8, Rules Governing Section 2255 Proceedings.

## I.   PROCEDURAL BACKGROUND

Petitioner was indicted on March 28, 2005, for two counts of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 1.)  He pled not guilty at arraignment on June 7, 2005. (Minute Entry 06/07/2005.) On June 22, 2005, Petitioner's counsel filed a sealed motion requesting the court order a psychiatric/ psychological evaluation. (Doc. 12.) The government consented to and joined the motion for an evaluation. (Doc. 14.) An evaluation was ordered and completed. (Docs. 13, 15.) A hearing was held on January 5-6, 2006, and Petitioner was found to be unable to participate in his defense in a meaningful way, and was committed to the custody of the Bureau of Prisons ("BOP") for four months pursuant to 18 U.S.C. § 4241(b). (Minute Entry 01/05/2006-01/06/2006; Docs. 22-24.) The period of evaluation was continued to June 22, 2006. (Doc. 25.) Further evaluations were received under seal by the court on June 13, 2006 and November 13, 2006. (Docs. 27, 33). On August 8, 2006, Petitioner's counsel moved to withdraw. (Doc. 31.)

Petitioner filed a number of pro se notices and motions during the time he was in the custody of the BOP. (Docs. 32,

- 2 -

34-40.) On December 13, 2007, Petitioner filed a pro se motion
entitled "Motion for Dismissal of Criminal Charges due to
Technicalities and Violations of Civil and Human Rights." (Doc.
43.) On June 10, 2008, he filed a pro se motion entitled "Motion
for Dismissal of Criminal Charges in Refrence [sic] to
Possession of a Firearm in Commerce after Felony Conviction."
(Doc. 45.) In both motions, Petitioner claimed his right to a
fair, speedy, and public trial, under the provisions of
Amendment VI to the Constitution and Article 11.1(1) of the
Universal Declaration of Human Rights, had been violated. (Docs.
43, 45.) On July 2, 2008, Petitioner also filed an objection to
the federal detainer and to acts of malicious prosecution.
(Doc. 46.) On July 30, 2008, after a period of civil commitment,
a hearing was held and Petitioner was found competent to stand
trial, ordered to remain in custody pending trial, and was
appointed substitute counsel. (Minute Entry 07/30/2008.) Newly-
appointed counsel moved to continue the case, and an order
granting that motion was entered August 18, 2008. (Docs. 48,
50.)

Petitioner also filed six more pro se motions, entitled
declarations. (Docs. 51-56.) On August 4, 2008, Petitioner filed
an appeal of the court's order of July 30, 2008, which was

- 3 -

docketed with the Fourth Circuit Court of Appeals on October 2, 2008. (Docs. 58, 60.)

Petitioner's newly-appointed counsel filed a sealed motion to withdraw on September 12, 2008. (Doc. 57.)

At a status conference and hearing on October 6, 2008, the court ruled on pending motions, except Petitioner's motions to dismiss, and the court asked the government to file a brief as to speedy trial issues. (Minute Entry 10/06/2008; Docs. 43, 45, 46.) The government filed a sealed response as requested (Doc. 63), and Petitioner filed supplemental briefs regarding the pending motions. (Docs. 61-62.) On October 14, 2008, Petitioner filed a pro se notice of appeal regarding his motion for substitute counsel. (Doc. 64.) On October 20, 2008, Petitioner filed six additional pro se motions, generally captioned declarations. (Docs. 66-71.) Petitioner's appeal of his motion for substitute counsel was docketed with the Fourth Circuit Court of Appeals on October 22, 2008. (Docs. 72, 74.) The government moved to continue the matter to the November 2008 trial term, due to witness availability, and the court granted that motion. (Docs. 76. 80.) Petitioner's counsel filed a sealed motion to withdraw on November 12, 2008, regarding difficulties communicating with his client. (Doc. 81.) A status

- 4 -

conference was held on December 4, 2008, and December 19, 2008. (See Minute Entries 12/04/2008 and 12/19/2008.)

At the status conference on December 19, 2008, Petitioner's counsel was granted permission to file a motion to suppress evidence seized in November of 2004. (Minute Entry 12/19/2008; Docs. 85-86.) Hearings on the motion to suppress were held February 2, 2009, and February 10, 2009 (Minute Entries 2/02/09 and 02/10/2009), and Petitioner's motion to suppress was denied by the court on February 12, 2009. (Doc. 102.)

Petitioner filed a pro se notice of appeal regarding the denial of his motion to dismiss for speedy trial issues, which the court had denied at a status conference held on October 20, 2008. (Doc. 91; Minute Entry 10/20/2008.) On January 26, 2009, the government filed a motion to set a hearing date for all pending motions. (Doc. 94.) The court granted that motion and set a hearing date for February 2, 2009. (Doc. 95.) Petitioner filed a motion for self-representation and to discharge counsel on February 5, 2009. (Doc. 100.)  A motion hearing was held on February 10, 2009, and on February 11, 2009, an order was entered granting Petitioner's motion. (Doc. 101.)  The court set the trial date for March 16, 2009. (Minute Entry 02/10/2009.)

After the trial date was set, Petitioner filed another pro se motion in this court on February 19, 2009, to dismiss due to speedy trial violations. (Doc. 103.) On March 6, 2009, Petitioner filed three pro se "declarations" for habeas corpus, moving to dismiss for fair trial violations, and to have the government's witnesses who testified at the suppression hearing charged with perjury. (Docs. 104-106.) Petitioner's appeals were dismissed by the Fourth Circuit on March 9, 2009. (Docs. 108-110.) A motion hearing was held on March 16, 2009, and the court denied Petitioner's motions and declarations (Docs. 103-106). (Minute Entry 03/16/2009.)

Petitioner's jury trial commenced on March 16, 2009, and ended on March 20, 2009, with Petitioner being found guilty on both counts of the Indictment. (Doc. 117.) Petitioner filed motions seeking to vacate the verdict, a new trial, and transcripts of the trial. (Docs. 118-120.) On April 8, 2009, Petitioner was sentenced to 60 days for criminal contempt of court. (Doc. 121.) Petitioner's premature appeal of the court's October 6, 2008 oral order disposing of various motions was dismissed by the Fourth Circuit Court of Appeals. (Doc. 122.) Petitioner filed various motions and pleadings in-between his

trial and sentencing date, with this court continuing the

sentencing date. (Docs. 127, 129-133, 136, 140-142, 144-147.)

Petitioner was sentenced on Count One to 100 months of

imprisonment and three years of supervised release, and on Count

Two to 120 months of imprisonment and three years of supervised

release. (Doc. 150.) The court ordered that the active sentences

in Counts One and Two run consecutively, for a total of 220

months of imprisonment. (Id.) Petitioner's appeal was

unsuccessful, United States v. Rochelle, 422 F. App'x 275 (4th

Cir. 2011), as was his request for certiorari, Rochelle v.

United States, ____ U.S. ____, 132 S. Ct. 438 (2011).

Petitioner filed a motion under 28 U.S.C. § 2255, which was

dismissed without prejudice. (Docs. 178-179, 182-183.)

Petitioner then filed the instant § 2255 motion. (Petition (Doc.

189).)

## II.  PETITIONER'S CLAIMS

Petitioner's § 2255 motion raises thirty claims and many

additional sub-claims.  Given the number of claims, and their

often overlapping nature, the court has grouped them

substantively as follows.  Specifically, Petitioner alleges a

violation of his Second Amendment rights (Ground Twenty-Nine);

two alleged violations of his Fourth Amendment rights (Grounds

One and Two); three alleged violations of the Fifth Amendment
right to due process (Grounds Twenty-Five, Twenty-Six, and
Twenty-Eight); three alleged violations of his right to the
effective assistance of counsel (Grounds Eight, Eleven, and
Twenty-Four); one alleged violation of his Sixth Amendment right
to a speedy trial (Ground Twenty); an alleged violation of his
Sixth Amendment right to a public trial (Ground Thirty); four
allegations of a lack of subject matter jurisdiction (Grounds
Three through Six); two allegations of prosecutorial misconduct
(Grounds Seven and Twelve); one alleged Eighth Amendment
violation (Ground Twenty-One); three alleged instances of
judicial misconduct (Grounds Nine, Thirteen, and Twenty-Two);
one alleged instance of juror misconduct (Ground Twenty-Seven);
and eight alleged instances of "official misconduct" (Grounds
Ten, Fourteen through Nineteen, and Twenty-Three).  As
explained, none of these claims has merit.[2]

---

[2] Petitioner's pleadings are voluminous. The pleadings, at
times, are also difficult to follow. The undersigned has
attempted to respond to all of the many variations of
Petitioner's claims and sub-claims. To the extent that any have
not been specifically discussed, they should still be denied for
essentially the reasons set out herein.

## III. __STANDARD OF REVIEW__

As an initial matter, the court notes that where the issue of ineffective assistance of counsel is addressed below, the following standard of review applies. To prove ineffective assistance of counsel generally, a petitioner must establish: (1) that his attorney's performance fell below a reasonable standard for defense attorneys, and (2) that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). With respect to the first prong, the petitioner bears the burden of affirmatively showing that his counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms. Id. at 688-89; Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). With respect to the second prong, the petitioner must show that prejudice resulted from the deficient performance, that is, that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." Spencer, 18 F.3d at 233 (citing Strickland, 466 U.S. at 694).

- 9 -

Claims of ineffective assistance of counsel on appeal are also judged using the Strickland test. See Lawrence v. Branker, 517 F.3d 700, 708-09 (4th Cir. 2008). Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745, 752-53 (1983); see also Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989). Ineffective assistance of appellate counsel can be shown by demonstrating that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Bell v. Jarvis, 236 F.3d 149, 180 (4th Cir. 2000) (citation omitted).

The court notes too that Petitioner attempts to raise a number of new, additional claims below by way of tacit amendment to his original § 2255 motion. When the court states below that a claim is time-barred, this is because (1) Petitioner's new claims are subject to the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104-132 ("AEDPA") under subsection (f)(1); (2) subsections 28 U.S.C. § 2255(f)(2)-(f)(4) are inapplicable; and (3) Petitioner's new claims were filed after the one-year deadline

and do not relate back[3] to the claims set forth in his original

§ 2255 motion.  28 U.S.C. § 2255(f)(1)-(4).  In this case,

Petitioner's direct appeal was final on October 11, 2011, the

date his petition for writ of certiorari was denied.  <u>Rochelle</u>

<u>v. United States</u>, ____ U.S. ____, 132 S. Ct. 438 (2011).

Petitioner's convictions thus became final one year later in

October of 2012 under 28 U.S.C. § 2255(f)(1).

---

[3] Where claims raised for the first time in an amended
motion are not filed within the applicable time limit, the
untimely claims are barred by AEDPA unless they "relate back" to
claims raised in the original filing.  <u>United States v. Pittman</u>,
209 F.3d 314, 317 (4th Cir. 2000); Fed. R. Civ. P. 15(c).  Rule
15(c)(1)(B) provides that an amendment relates back when it
"asserts a claim or defense that arose out of the conduct,
transaction, or occurrence set out — or attempted to be set out
— in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  As
the Supreme Court stated in <u>Mayle v. Felix</u>, in the context of a
habeas motion, "conduct, transaction, or occurrence" does not
mean the same "trial, conviction, or sentence," such that any
claim that relates to the prior conviction or sentence
challenged in a habeas motion is considered timely, no matter
how long after the original motion it is filed.  545 U.S. 644,
664 (2005).  Rather, a proposed amendment relates back to the
date of the original motion if it "state[s] claims that are tied
to a common core of operative facts."  <u>Id.</u>  With respect to
claims of ineffective assistance of counsel, a new claim of
ineffective assistance of counsel does not relate back to an
earlier asserted claim of ineffective assistance of counsel if
the "new claim asserts 'a new ground for relief supported by
facts that differ in both time and type from those the original
pleading set forth.'"  <u>United States v. Gonzalez</u>, 592 F.3d 675,
680 (5th Cir. 2009) (quoting <u>Mayle</u>, 545 U.S. at 650).

# IV. DISCUSSION

## A. Subject Matter Jurisdiction (Grounds Three Through Six)

### 1. Ground Three

As an initial matter, Petitioner makes a number of claims asserting a lack of subject matter jurisdiction. (Petition (Doc. 189), Grounds Three through Six.) More specifically, in Ground Three Petitioner asserts a lack of subject matter jurisdiction based on the grounds that he was "not afforded the opportunity to be present during the Grand Jury selection phase" which deprived him of determining whether the grand jurors "were lawfully drawn, selected and legally qualified." (Id., Ground Three.)

Such arguments, which are perhaps better described as allegations of an abuse of due process, must be made by motion in "criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier . . . ." 28 U.S.C. § 1867(a) & (e) ("The procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime, the Attorney General of the United States or a party in a civil case may challenge any jury on the ground that such jury was not selected

in conformity with the provisions of this title."). Petitioner's claims are therefore untimely.[4]

Petitioner's Memorandum of Law in Support of his § 2255 includes letters[5] purporting to raise this type of issue with the court and the United States Attorney's Office in early 2005. (Pet'r's Mem. (Doc. 199), Ex. A (Doc. 199-1), Ex. O (Doc. 199-12).) However, Petitioner has failed to demonstrate that these letters were filed with this court before late 2013, close to ten years later. Consequently, the court still concludes that Ground Three was not timely made as required, and is therefore not subject to collateral review. United States v. Webster, 639 F.2d 174, 180 (4th Cir. 1981). Moreover, to the extent Petitioner contends he had the right to testify at the grand jury hearing, or to have exculpatory evidence presented, his claim(s) fail(s) on the merits. See also United States v.

---

[4] Nothing on the record suggests that any members of the grand jury were unlawfully drawn of unqualified to serve.

[5] The court notes that there is no indication on these letters that they were ever sent or received. The court notes further that in a supplemental reply, Petitioner asserts that the government failed to provide the grand jury with exculpatory evidence. (Pet'r's Mem. (Doc. 199) at 26-27.) However, in addition to being time-barred and without a basis in the law, this claim, is also too vague, conclusory, and unsupported to be reviewed further. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999).

- 13 -

<u>Williams</u>, 504 U.S. 36, 52 (1992) ("[N]either in this country nor in England has the suspect under investigation by the grand jury ever been thought to have a right to testify or to have exculpatory evidence presented.") (citations omitted).

Additionally, the court notes that in a supplemental filing, Petitioner raises a number of additional claims. First, Petitioner asserts that the court has failed to give him access to grand jury transcripts. (Pet'r's Mem. (Doc. 199) at 29.)[6] However, this claim is untimely under 28 U.S.C. § 1867(a) and further fails for a lack of a particularized need for this information. <u>United States v. Henderson</u>, 532 F. App'x 381, 384 (4th Cir.), <u>cert. Denied</u>, _____ U.S. _____, 134 S. Ct. 450 (2013) citing <u>United States v. Sells Eng'g, Inc.</u>, 463 U.S. 418, 443 (1983).

Second, Petitioner contends in a conclusory manner that the court did not afford him a "fair and impartial cross-section of African-American citizens during the general composition of the Grand jury." (Pet'r's Mem. (Doc. 199) at 29.) This claim is untimely under 28 U.S.C. § 1867(a) and also fails for being

_____

[6] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

vague, conclusory, and unsupported.  Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999).

Third, Petitioner raises a claim that the government failed to indict him in a timely fashion and therefore violated 18 U.S.C. § 3161(b). (Pet'r's Mem. (Doc. 199) at 28.)  However, this claim also fails on the merits.  18 U.S.C. § 3161(b) provides that, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  18 U.S.C. § 3161(b).  Petitioner was indicted in this matter on March 28, 2005.  (Doc. 1.)  An arrest warrant was issued on March 30, 2005.  (Doc. 2.)  The warrant was returned executed on June 13, 2005, indicating Petitioner had been arrested on June 7, 2005.  (Doc. 9.)  Because Petitioner was not arrested federally prior to his indictment, there could be no

violation of 18 U.S.C. § 3161(b).[7]  None of these claims or sub-claims has merit.

## 2. **Grounds Four through Six**

Next, Grounds Four through Six assert a lack of subject matter jurisdiction based upon alleged non-compliance with procedures involved in the mental competency evaluation ordered for Petitioner. (Petition (Doc. 189), Ground Four.)  For the following reasons, these claims, which are better categorized as claims alleging a violation of due process, have no merit.

18 U.S.C. § 4241 sets forth the procedure courts must follow to determine a defendant's competency and establishes several milestones that must be reached to ensure that defendants are afforded due process and a fair trial.  See United States v. Giron-Reyes, 234 F.3d 78, 80-82 (1st Cir. 2000). Pursuant to subsection (a) of 18 U.S.C. § 4241, a

_____

[7] See, e.g., United States v. Taylor, 240 F.3d 425, 427-28 (4th Cir. 2001) (citations omitted) (explaining that "the time limits of the [Speedy Trial] Act begin only after a federal arrest, not a state arrest"); United States v. Cohen, No. CR. WDQ-14-0310, 2015 WL 2261661, at *13 (D. Md. May 7, 2015) ("Here, Cohen was indicted before he was arrested; thus, § 3161(b) does not apply."); United States v. Dye, 538 F. App'x 654 (6th Cir. 2013), cert. denied, ____ U.S. ____, 134 S. Ct. 1504 (2014); United States v. Johnson, 953 F.2d 1167, 1172 (9th Cir. 1992) ("[O]nly a federal arrest will trigger the running of the time period set forth in 18 U.S.C. § 3161(b).") (citation omitted).

- 16 -

district court must order a hearing once it determines there is reason to believe that a defendant is suffering from a mental disease or defect that renders him or her incompetent. 18 U.S.C. § 4241(a); see also Giron-Reyes, 234 F.3d at 80. Here, this hearing was held on January 5-6, 2006. (Minute Entry 01/05/2006-01/06/2006; Docs. 22-23.)

Subsection (b) of § 4241 prescribes that, prior to the date of the hearing, a defendant must submit to a psychiatric or psychological examination. 18 U.S.C. § 4241(b). In this case, Petitioner was examined by Dr. Kevin McBride prior to the evidentiary hearing. (Doc. 22 at 11-32.)

Subsection (d) of 18 U.S.C. § 4241 further prescribes that, once the hearing is held, the district court may make a finding "that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent" only by a preponderance of the evidence. 18 U.S.C. § 4241(d). Subsection (d)(1) establishes that, if a defendant is found to be incompetent, the district court must place him under the custody of the Attorney General to be hospitalized for up to four months to determine if there is a substantial probability that he will

attain competency in the foreseeable future.  18 U.S.C.
§ 4241(d)(1).

In this case, once the court found Petitioner suffered from
a mental disease rendering him incompetent, insofar as he could
not assist properly in his own defense, a sealed order was
entered on February 2, 2006, placing Petitioner under the
custody of the Attorney General for four months. (Doc. 24 at 1.)
This was to determine whether there was a substantial
probability whether Petitioner would attain the capacity to
permit trial of the matter to proceed.  (Id. at 2.)  The court
entered a second order on March 17, 2006, to run the four months
from the date Petitioner arrived at the mental health unit of
the facility on February 23, 2006, until four months later on
June 22, 2006. (Doc. 25.)

On April 11, 2006, the Federal Medical Center in Butner,
North Carolina, issued an evaluation of Petitioner filed with
the court on June 13, 2006, stating that he was not currently
competent to stand trial. (Doc. 27.) It indicated that if it did
not hear from the court by the end of the current study period
of June 22, 2006, the United States Marshals would return
Petitioner to "your district court secondary to our inability to

legally detain him at this facility following that date." (Id. at 1.)

On July 7, 2006, the government filed a sealed motion moving the court to order a psychiatric and psychological examination of Petitioner to determine whether civil commitment was necessary. (Doc. 28.) 18 U.S.C. § 4246(d) permits indefinite hospitalization of a federal prisoner due for release only if, as a result of mental illness, the court finds by clear and convincing evidence after a hearing that the person suffers from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another. 18 U.S.C. § 4246(d). See United States v. Williams, 299 F.3d 673, 676 (8th Cir. 2002). To that end, the statute also permits, prior to the date of the hearing, the court to order a psychiatric or psychological examination. 18 U.S.C. § 4246(b).

Here, on July 13, 2006, the court issued a sealed order committing Petitioner to the custody of the Attorney General for placement in a suitable facility "for a psychiatric and psychological examination and report with respect to whether [he was] 'suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily

- 19 -

injury to another person or serious damage to property of another.' 18 U.S.C. §§ 4246(a) & 4247(c)(4)(C)." (Doc. 30 at 1.) The report was filed with the court on November 13, 2006. (Doc. 33.) It concluded that Petitioner's "release from custody would create a substantial risk of harm to others and the property of others." (Id. at 1.)

On August 8, 2007, after a hearing, the United States District Court for the Eastern District of North Carolina concluded, by clear and convincing evidence, that Petitioner was "presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another." (Doc. 42.) Petitioner was ordered to be committed indefinitely to the custody and care of the Attorney General pursuant to 18 U.S.C. § 4246. (Id.)

Thereafter, Petitioner remained hospitalized at the Federal Medical Center in Butner, North Carolina. (Doc. 192, Attach. 1.) On May 30, 2008, the Warden of that facility, requested pursuant to 18 U.S.C. § 4246(e), that Petitioner be discharged from his commitment at Butner because he had "recovered from his mental disease or defect to such an extent that his release would no

longer create a substantial risk of bodily injury to another
person or serious damage to property of another."  (Id.)

    At that point, the question of whether Petitioner was
competent to stand trial still remained.  Consequently, on July
30, 2008, the court held a hearing and found Petitioner
competent to stand trial.  (Doc. 158 at 32; Minute Entry
07/30/2008.)

    Here, there is no indication from the record that
compliance with the procedures to determine mental competency
under 18 U.S.C. § 4241, or any other relevant statute, were
meaningfully irregular or improper.  See, e.g., United States v.
Strong, 489 F.3d 1055, 1061-62 (9th Cir. 2007) (concluding that
§ 4241(d) consistent with Due Process Clause). Moreover, as
observed earlier, Petitioner's claims are not the type of claims
that would deprive the court of jurisdiction, but rather are
allegations of a violation of due process.  Petitioner has also
failed to demonstrate any prejudice through any of the mental
competency procedures or determinations made during these
proceedings and his claims should therefore be denied.  See
United States v. Lovasco, 431 U.S. 783, 790 (1977) ("[P]rejudice
is . . . a necessary . . . element of a due process claim.").

**B.   Second Amendment (Ground Twenty-Nine)**

Next, Petitioner asserts that the charges and convictions in this case violate the Second Amendment. (Petition (Doc. 189), Ground Twenty-Nine.)  This claim has no merit.

In District of Columbia v. Heller, 554 U.S. 570, 625 (2008), the Supreme Court held that the Second Amendment confers a right to keep and bear arms "typically possessed by law-abiding citizens for lawful purposes."  Following Heller, the Fourth Circuit developed a "framework for deciding Second Amendment challenges" in United States v. Chester, 628 F.3d 673, 678 (4th Cir. 2010.)  That framework has two steps. First, it asks whether "the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." Id. at 680.  That is, was "the conduct at issue . . . understood to be within the scope of the right at the time of ratification"?  Id.  If the answer is no, "the challenged law is valid."  Id.  "If the challenged regulation burdens conduct that was within the scope of the Second Amendment as historically understood, then we move to the second step of applying an appropriate form of means-end scrutiny." Id.

However, "the Chester analysis is more streamlined" in cases involving firearms regulations deemed "presumptively

lawful" in Heller.  United States v. Moore, 666 F.3d 313, 318 (4th Cir. 2012).  That is, a presumptively lawful regulation could not violate the Second Amendment unless, as applied, it proscribed conduct "fall[ing] within the category of . . . 'law-abiding responsible citizens . . . us[ing] arms in defense of hearth and home.'" See id. at 319 (quoting Heller, 554 U.S. at 635). Among the regulations enumerated as presumptively lawful in Heller are "longstanding prohibitions on the possession of firearms by felons."  Heller, 554 U.S. at 626-27 & n.26.

As in this case, United States v. Moore, addressed a Second Amendment challenge to the presumptively lawful felon-in-possession prohibition under 18 U.S.C. § 922(g)(1). 666 F.3d at 316. However, as is the case, the defendant in Moore failed to rebut the presumption of lawfulness by showing his conduct was that of a "law-abiding responsible citizen" acting "in defense of hearth and home."  See id. at 319. Thus, the Fourth Circuit rejected Moore's challenge. The court will do the same here in this case for the same reason. This claim is denied.[8]

---

[8] To the extent Petitioner attempts to raise new claims in his supplement on this issue — including the sufficiency of the evidence and questions of double jeopardy — they are time-barred and also without merit.  (Doc. 199 at 216-20.)

## C. __Fourth Amendment (Grounds One and Two)__

Petitioner next alleges that he was subject to two separate searches and seizures in violation of the Fourth Amendment for each of the two instances in which he was found to possess firearms. (Petition (Doc. 189), Grounds One and Two.) For the following reasons, these claims lack merit.

First, these issues were raised on appeal and the Fourth Circuit concluded that Petitioner waived the issue of the May 2004 encounter with law enforcement by not raising it with this court and concluded further that this court correctly denied Petitioner's motion to suppress related to the November 2004 encounter with law enforcement. Rochelle, 422 F. App'x at 276. Petitioner cannot raise anew issues decided on their merits by the Fourth Circuit. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Consequently, the issue of the November 2004 encounter with law enforcement is barred.

Moreover, petitioner had the opportunity to fully and fairly litigate both his Fourth Amendment search and seizure claims. See Stone v. Powell, 428 U.S. 465, 494 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that

evidence obtained in an unconstitutional search or seizure was introduced at his trial."). See also United States v. Johnson, 457 U.S. 537, 562 n.20 (1982) (recognizing Stone's applicability to § 2255 cases). Consequently, Petitioner's challenge to both his May 2004 and November 2004 encounters with law enforcement are not cognizable on collateral review.

Petitioner disputes this and in support asserts that his various counsel were constitutionally ineffective by failing to raise these issues. (Pet'r's Reply (Doc. 195) at 1-8; Pet'r's Mem. (Doc. 199) at 8.) It is true that ineffective assistance of counsel can deprive a petitioner of a full and fair opportunity to litigate a Fourth Amendment issue and therefore warrant collateral review. Kimmelman v. Morrison, 477 U.S. 365, 378-79 (1986).

However, here, for at least two reasons, Petitioner is mistaken that ineffective assistance of counsel deprived him of a full and fair opportunity to litigate his Fourth Amendment claims. First, counsel raised the November 2004 search and seizure in a motion to suppress on December 15, 2008 (Doc. 85), which was denied on February 12, 2009 (Doc. 102). As explained earlier, the issue was also raised again on appeal. Thus, Petitioner's Fourth Amendment claim regarding this search was

litigated and counsel was therefore not ineffective for failing
to raise it.

Nor did counsel's failure to raise the Fourth Amendment
issues attendant to the May 2004 encounter with law enforcement
deprive Petitioner a full and fair opportunity to raise and
litigate those claims.  This is because Petitioner represented
himself at and prior to trial and so could have raised them if
he so desired.  Specifically, on February 11, 2009, the court
granted Petitioner's motion to discharge counsel and to
represent himself pro se.  (Doc. 101.)  In that order, the court
concluded that Petitioner "made a knowing and voluntary decision
to proceed pro se."  (Id. at 1.)  The court also extended the
date of trial to March 16, 2009, at Petitioner's request, nearly
five weeks away. (Id. at 2.) Petitioner was well aware that he
could raise relevant legal issues or request additional time as
needed and the court would grant such requests where warranted.

Therefore, while it is true counsel did not raise the May
2004 stop in a motion to suppress, Petitioner, who represented
himself for five weeks prior to trial, could have.  Petitioner
filed many pro se pleadings during the course of these
proceedings (including during the time he represented himself)
and demonstrated an ability and willingness to inform the court

- 26 -

of any concern he might have.  As explained earlier, appellate counsel did raise this issue on appeal.  Consequently, the government is correct that Petitioner had a full and fair opportunity to litigate both of these issues.

Last, Petitioner's Fourth Amendment claims also fails on the merits.  Regarding the November 2004 encounter, Petitioner was reported filming prisoner transports near a state prison with a two-way radio in his hand. (PSR ¶ 8.)  Petitioner had backed his vehicle into the driveway of a vacant home and raised the hood of it as if he was having car problems. (Id.) Believing Petitioner was a potential security threat, an officer advised Petitioner that he was going to be searched for weapons. (Id. ¶ 9.) The officer felt what he believed to be was a handgun holster and attempted to place handcuffs on Petitioner, who resisted, shoved the officer, and attempted to flee. (Id.) Petitioner was subdued with pepper spray. (Id.) A search of his vehicle lead to the discovery of a list of prisoners, firearms, ammunition, a loaded crossbow, and business cards with Petitioner's name on them and stating further "Convicted Felon Committee, Fighting for Freedom." (Id. ¶ 10.) This court entered a detailed order evaluating Petitioner's Fourth Amendment claim

as to this issue. (Doc. 102.) Nothing in Petitioner's pleadings causes the court to alter any conclusions made in that order.

The Fourth Circuit likewise concluded that this search was reasonable under Terry v. Ohio and Arizona v. Gant. Rochelle, 422 F. App'x at 277 (citing Terry v. Ohio, 392 U.S. 1, 30 (1968); Arizona v. Gant, 556 U.S. 332, 350-51 (2009)). Again, not only does this claim fail on the merits, but any reiteration of this claim as an ineffective assistance of counsel claim also fails because counsel is not constitutionally ineffective for omitting a meritless claim.

Last, the same is true of the May 2004 encounter with law enforcement. The arresting officer, who initially stopped Petitioner for speeding, testified at trial that, in essence, law enforcement had every reason to believe Petitioner was currently armed and dangerous and in violation of state and federal law.[9] He stated that by the time he removed the firearm from Petitioner's pants he was aware that (1) Petitioner did not initially stop his vehicle in response to the officer's lights

---

[9] In North Carolina, it is a crime to carry an unlicensed and concealed weapon, and it is also illegal for felons to carry a firearm. N.C. Gen. Stat. §§ 14-269; 14-415.1(a). Section 922(g)(1) also makes it unlawful under federal law to possess both firearms and ammunition by convicted felons like Petitioner. 18 U.S.C. § 922(g)(1).

and siren; (2) Petitioner had boxes in plain view of his open glove compartment labeled "ammunition"; (3) Petitioner had two loaded clips in his left front pocket; (4) Petitioner had another loaded clip attached to a pouch on his belt; (5) Petitioner had a felony conviction for assault with a deadly weapon with the intent to kill causing serious bodily injury; (6) Petitioner had an empty holster on the floorboard of his vehicle; and (7) Petitioner was yelling "I ain't got shit on me."[10] (Doc. 175 at 52-59, 64-68, 70, 97, 108; PSR ¶ 26.)

Petitioner was arrested for being a felon in possession of a firearm and for felony carrying a concealed weapon and transported to the High Point Police Department for processing and interviewing. (Id. at 64; PSR ¶ 7.) He executed a Miranda waiver and informed law enforcement that he "had gotten the weapon" and "had only fired the gun five times into the ground to make sure it worked." (Doc. 175 at 65-68.)

None of this suggests that Petitioner's Fourth Amendment claim as to the May 2004 encounter with law enforcement has

---

[10] See Whren v. United States, 517 U.S. 806, 810 (1996); Arizona v. Johnson, 555 U.S. 323, 326 (2009); Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977); United States v. Elston, 479 F.3d 314, 320 (4th Cir. 2007); United States v. Holmes, 376 F.3d 270, 280-81 (4th Cir. 2004); United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004); United States v. Leshuk, 65 F.3d 1105, 1109-10 (4th Cir. 1995).

merit, or that counsel was ineffective for failing to raise it prior to trial.  And, as explained above, Petitioner could have raised this issue with the court during his period of self-representation, but he failed to do so.  Petitioner's first and second grounds for relief lack merit and are thus denied.[11]

---

[11] Petitioner also asserts that law enforcement planted the firearm on him during the May 2004 encounter. (Petition (Doc. 189), Ground One.) Petitioner did not raise this issue in a motion with the court when he represented himself, nor did counsel raise this issue pretrial or on appeal.  Were it raised on its own now, therefore, it would be subject to the procedural bar. United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010). Any ineffective assistance of counsel iteration of this claim also fails. The problem for counsel here was that for this claim to have any chance of success, Petitioner would have had to have testified during a motion to suppress. Petitioner was not an effective witness as repeatedly evinced throughout these proceedings. For example, the court found at sentencing that Petitioner obstructed justice by falsely stating that he had never been interviewed by probation in an effort to compile a presentence investigation report. (Doc. 171 at 105.) At trial, the court also held Petitioner in criminal contempt for obstructing the administration of justice through his continuing efforts to make improper, inappropriate, and inflammatory comments in the presence of the jury. (Doc. 121.) During his trial, Petitioner also requested "trial by combat" rather than a trial of his peers. (Doc. 169 at 51.)  As explained below, Petitioner has also filed with the court a fabricated document purportedly from a juror. Petitioner was not an effective witness and counsel was not ineffective for not calling him to the stand for testimony.  To the extent Petitioner makes similar allegations of planted evidence in Ground Two, they fail for the same reasons just articulated. (Petition (Doc. 189), Ground Two.)

**D.** **Fifth Amendment (Grounds Twenty-Five, Twenty-Six, and Twenty-Eight)**

Petitioner next alleges violations of his Fifth Amendment right to due process. (Petition (Doc. 189), Grounds Twenty-Five, Twenty-Six, and Twenty-Eight.) Ground Twenty-Five is directed at the actions of a deputy clerk at the Fourth Circuit Court of Appeals, regarding Petitioner's request to obtain evidence in order to prepare a "pro se supplemental brief" in his appellate case. (Petition (Doc. 189) at 49.)  Petitioner had appointed appellate counsel (Doc. 154), and was therefore not a pro se appellant lacking representation. There is no indication Petitioner gave notice of any intent to proceed without counsel in his appeal, as required in the Fourth Circuit's Local Rule 46(f). 4th Cir. R. 46(f). Petitioner cannot demonstrate a due process violation where there was no right to either obtain evidence directly or file a "pro se supplemental brief" as a matter of law.  Beyond this he has failed to demonstrate any prejudice. Lovasco, 431 U.S. at 790. The same applies to Petitioner's claims under Grounds Twenty-Six, against the three-judge panel of the Court of Appeals, and to Ground Twenty-Eight, against the justices of the United States Supreme Court.  These claims are denied.

- 31 -

**E.    Sixth Amendment (Grounds Twenty and Thirty)**

    **1.    Ground Twenty**

Petitioner alleges a Sixth Amendment violation of his right to a speedy trial in Ground Twenty, relating to the time it took to work through the above-mentioned competency issues, and alleges further a violation of his right to a public trial in Ground Thirty. (Petition (Doc. 189), Grounds Twenty and Thirty.)

Specifically, Petitioner claims the court did not make written or oral findings on July 13, 2006, regarding the Speedy Trial Act and exclusion of time.  (Id., Ground Twenty.) Petitioner's Speedy Trial claim was raised prior to trial (Doc. 43, 103), heard by the district court, and denied.  (Minute Entry 10/20/2008; Minute Entry 01/27/2009; 03/16/2009 Minute Entry.)

At the hearing on October 20, 2008, the court found as follows on this issue:

> The Court finds first as a fact that based on the record, the time frame -- the times under the Speedy Trial Act that are properly excluded are readily apparent from the docket entries and motions and orders that have been entered in the case as well as the description of the procedural history of the case as set out by the Government in its sealed response to the defendant's motion to dismiss. And for the reasons set out in that response as well as the procedural history of this case as reflected on the record, the Court finds that the time frames -- taking into consideration the time -- periods of time that are

- 32 -

properly excluded under the Speedy Trial Act that the
motion should be denied.

(Doc. 167 at 8.)

The court therefore adopted the government's position as
set forth in its briefing on this issue, which asserted that:

> The defendant was arraigned on June 7, 2005, at
> which time the seventy day deadline to bring the
> defendant to trial began. 18 U.S.C. § 3161(c)(1).
> Fifteen days later, the government's sealed motion for
> psychiatric and psychological evaluation was filed,
> beginning an excluded period. All the remaining time
> from June 22, 2008, until the hearing scheduled for
> October 20, 2008, is excluded under 18 U.S.C. § 3161
> as outlined below.
>
> For motions not requiring hearings, the excluded
> period is limited to thirty days; if a hearing is
> conducted, "all time between the filing of a motion
> and the conclusion of the hearing on that motion,
> whether or not a delay in holding that hearing in
> reasonably necessary," is excluded under the Speedy
> Trial Act. Henderson v. United States, 476 U.S. 321,
> 330, 106 S. Ct. 1871, 90 L.Ed.2d 299 (1986). In this
> matter, the first motion requiring a hearing was the
> government's motion . . . for psychiatric and
> psychological examination and report, filed June 22,
> 2005. The period between that motion and the first
> competency hearing, held January 5, 2006, is excluded
> under § 3161(h)(1)(F). The period between when the
> Court found the defendant incompetent to proceed and
> competent to proceed is excluded under § 3161(h)(1)(A)
> and § 3161(h)(4), which covers any period resulting
> from any proceeding and examination to determine
> competency, and any period resulting from the fact
> that the defendant is incompetent to stand trial.
>
> The period from July 30, 2008, when the defendant
> was found competent to proceed to trial, and
> September 8, 2008, was ordered excluded under
> § 3161(h)(8), with the Court making findings necessary

- 33 -

under § 3161(h)(8)(A).  By order of the Court on
August 18, 2008, the above-captioned matter was
continued "for good cause shown" until the October,
2008 Criminal Term.  The government's position is that
the period after August 18, 2008, and the criminal
term beginning October 6, 2008, is excluded under
§ 3161(h)(8)(A).

During the period excluded by order of the Court,
counsel for the defendant filed a sealed motion to
withdraw on September 12, 2008. As with the motion to
withdraw filed by the previous attorney for the
defendant, this motion necessitated a hearing, and the
time until the date of hearing on October 6, 2008, is
excluded under § 3161(h)(1)(F).

(Doc. 63 at 4-6.)

Nothing in Petitioner's current pleadings would warrant a

conclusion on this issue different than the one the court has

already rendered (Doc. 167 at 3-8), and this claim is therefore

denied.

### 2.   Ground Thirty

As for Petitioner's claim under Sixth Amendment public

trial provisions in Ground Thirty, it states that a person named

Walter Davis was barred from observing the trial. (Petition

(Doc. 189), Ground Thirty.)  At one point during voir dire, the

court observed that though the jury was absent, the husband of a

juror was present. (Doc. 168 at 122.)  The court asked the

husband, Walter Davis, to step outside the courtroom and "to the

extent [Davis] heard any of this discussion, . . . order[ed]

- 34 -

[him] not to disclose it to [his] wife or any other juror until after trial [was] complete." (Id.)  This claim has no merit.

### F.   **Eighth Amendment (Ground Twenty-One)**

Next, Petitioner claims that his sentence is so excessive it violates the Eighth Amendment's prohibition on cruel and unusual punishment. (Petition (Doc. 189), Ground Twenty-One.) It is well-settled, however, that an Eighth Amendment proportionality review is not available in the Fourth Circuit "for any sentence less than life imprisonment without the possibility of parole." United States v. Ming Hong, 242 F.3d 528, 532 (4th Cir. 2001) (citing United States v. Polk, 905 F.2d 54, 55 (4th Cir. 1990)); United States v. Person, 381 F. App'x 275 (4th Cir. 2010).  Additionally, in the opinion affirming this court's judgment in Petitioner's matter, the Fourth Circuit stated, "[a]fter thoroughly reviewing the record, we conclude that Rochelle's variance sentence was both procedurally and substantively reasonable." Rochelle, 422 F. App'x at 277.  This claim is without merit.

Petitioner's supplement also attempts to raise a host of additional sentencing issues. (Pet'r's Mem. (Doc. 199) at 148-63.) These additional sub-claims are time-barred and, beyond that, most or all of them are not cognizable in this proceeding.

"The Supreme Court has instructed that only those errors
presenting a 'fundamental defect which inherently results in a
complete miscarriage of justice" are cognizable.'" <u>United States
v. Foote</u>, 784 F.3d 931, 932 (4th Cir.) (quoting <u>Davis v. United
States</u>, 417 U.S. 333, 346 (1974), <u>cert. denied</u>, ____ U.S. ____,
135 S. Ct. 2850 (2015)). Furthermore, as noted, the Fourth
Circuit Court of Appeals also reviewed Petitioner's sentence and
found it to be without error. <u>Rochelle</u>, 422 F. App'x at 277.
Again, Petitioner cannot raise anew issues decided on their
merits by the Fourth Circuit. <u>Boeckenhaupt</u>, 537 F.2d at 1183.[12]
All of these claims or sub-claims fail.

### G.   <u>Prosecutorial Misconduct (Grounds Seven and Twelve)</u>

Petitioner next asserts two grounds of prosecutorial
misconduct. (Petition (Doc. 189), Grounds Seven and Twelve.) To
prove prosecutorial misconduct, "a defendant bears the burden of
showing (1) that the prosecutors engaged in improper conduct,
and (2) that such conduct prejudiced the defendant's substantial
rights so as to deny the defendant a fair trial." <u>United States
v. Alerre</u>, 430 F.3d 681, 689 (4th Cir. 2005).

---

[12] Were the court to review Petitioner's sub-claims, it
would deny them on the merits for want of any meaningful support
in their favor.

### 1. **Ground Seven**

More specifically, Petitioner alleges in Ground Seven prosecutorial misconduct for failure to provide him copies of records of mental or physical evaluations prior to the competency hearing on January 5 and 6, 2006. (Petition (Doc. 189), Ground Seven.) It is clear from the transcript of that hearing that Petitioner was represented by counsel and that counsel had received the report of Dr. Kevin J. McBride. (Doc. 22 at 9-10, 17-23, 32.) Petitioner was not at that time appearing pro se, and thus there was no violation as alleged, as his counsel had received the report. Petitioner also fails to make any specific allegation of prejudice and so, consequently, he satisfies neither prong of the analysis.

### 2. **Ground Twelve**

Petitioner's second claim of prosecutorial misconduct appears at Ground Twelve, where he alleges misconduct for not providing him with discovery in his criminal matter. (Petition (Doc. 189), Ground Twelve.) However, Petitioner represented himself at trial and for roughly five weeks leading up until trial, with the aid of standby counsel. (Minute Entry 02/10/2009; Minute Entry 03/16/2009.) Standby counsel filed a notice with the court on March 13, 2009, stating that counsel

"received discovery materials from the United States Attorney's Office in this case on Thursday, March 12, 2009. Counsel personally hand delivered these discovery materials to defendant on Friday, March 13, 2009 at approximately 10:00 a.m." (Doc. 114 at 3-4.)

Beyond this, Petitioner fails to articulate precisely what evidence was withheld from him along with how any particular item of withheld evidence would have benefited his case. Therefore, Petitioner has also failed to demonstrate prejudice. For all these reasons, this claim fails.

The court notes further that in a supplement, Petitioner mentions Brady v. Maryland, 373 U.S. 83, 87 (1963) and its progeny. (Petition (Doc. 199) at 99.) Under that case, and its progeny, the failure by the prosecution to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Kyles v. Whitley, 514 U.S. 419, 432 (1995) (citation omitted); see also Giglio v. United States, 405 U.S. 150, 154–55 (1972). As such, a Brady violation occurs if evidence is (1) favorable to the accused (either exculpatory or impeaching), (2) suppressed by the prosecution (willfully or inadvertently), and

(3) material (prejudicial). <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004); <u>see also</u> <u>Monroe v. Angelone</u>, 323 F.3d 286, 299–300 (4th Cir.2003) (citing <u>Strickler v. Greene</u>, 527 U.S. 263, 281–82 (1999)). In addition to being time-barred, any such claim here would also fail on the merits because Petitioner has not meaningfully satisfied any of these three elements.

Petitioner's supplement also asserts that the prosecutor engaged in misconduct at trial. Specifically, at trial, Petitioner called Triniece Hayden as a witness. (Doc. 176 at 84.) On cross-examination, the prosecutor inquired into Hayden's prior criminal convictions for attempted common law robbery in 2002, uttering a forged instrument in 2005, and financial card fraud and common law forgery in 2001 and 2003. (<u>Id.</u> at 99–101.) There was nothing improper here and even if there were, the evidence against Petitioner was so overwhelming any error would be harmless at most. Fed. R. Evid. 609.

Likewise, Petitioner faults counsel for suggesting in the presence of the jury, "that the absence of [the individual in Petitioner's car during the May 2004 stop] was testament to [Petitioner's] 'guilt' of being in possession of a firearm." (Doc. 199 at 105.) Petitioner asserts further that "[t]his improper inference had also been addressed towards defense

- 39 -

witness Christopher Washington, and James Stevenson." (Id.) In addition to being time-barred, these sub-claims are simply too vague, conclusory, and unsupported to proceed. Nickerson, 971 F.2d at 1136. It is not clear exactly what Petitioner is objecting to or why the statements in question (if they exist) are material or prejudicial. All of Petitioner's claims and sub-claims fail here.

### H. Ineffective Assistance of Counsel (Grounds Eight, Eleven, and Twenty-Four)

Petitioner also brings ineffective assistance of counsel claims against all three attorneys assigned to represent him. (Petition (Doc. 189), Grounds Eight, Eleven, Twenty-Four.)

In Ground Eight, Petitioner asserts that Eric D. Placke, one of his pretrial attorneys, was ineffective in at least two dozen ways for, essentially, neglecting to prepare for trial. (Pet'r's Mem. (Doc. 199) at 47-60.) Had counsel properly prepared for trial, Petitioner contends, Placke would have essentially uncovered proof of Petitioner's innocence and various other forms of official misconduct along with a host of exculpatory or mitigating evidence.[13] (Id. at 47-57.) Likewise,

---

[13] Many of these allegations of ineffective assistance of counsel also appear to be reiterations of various other grounds addressed herein and found to be without merit.

Petitioner faults counsel for failing to file pretrial motions
and further asserts that counsel told him that he (counsel) was
not legally permitted to investigate evidence in support of
Petitioner's innocence. (Id. at 57-59.)  These claims manage to
be at the same time voluminous, yet vague, conclusory,
unsupported, and frequently contradicted by testimony on the
record.  Petitioner includes no supporting affidavits from
anyone that would presumably provide the unarticulated
exculpatory evidence, no explanation why said motions were
likely to be successful, and no meaningful and specific
allegation of prejudice as to how he was harmed.  His claims,
which fail to satisfy the Strickland elements, are denied.
Nickerson, 971 F.2d at 1136.[14]

---

[14] Petitioner also faults counsel for failing to appeal the
court's ordering of a competency evaluation after being told to
do so. (Pet'r's Mem. (Doc. 199) 57-58; Doc. 23 at 40; Doc. 24.)
This claim is untimely and therefore time-barred. Moreover, and
in any event, the competency evaluation and proceedings have
long since finished and cannot be undone.  Petitioner was
ultimately deemed competent to stand trial and he represented
himself at trial. Petitioner also pursued an appeal in this
matter. As explained in detail above, the competency proceedings
in this case were sufficient. And, as a practical matter, there
is no remedy for this particular sub-claim even if it had merit,
because a finding that the initial incompetency preceding was
infirm would not change Petitioner's current legal status.

Petitioner makes similar arguments directed at standby counsel George E. Crump, III, in Ground Eleven (Pet'r's Mem. (Doc. 199) at 85-93) and appellate counsel James Darren Byers in Ground Twenty-Four. (<u>Id.</u> at 192.)  However, these claims are deficient for the same reasons explained above.[15]  Consequently, these claims fail as well.[16]

## I.  **Official Misconduct (Grounds Ten, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, and Twenty-Three)**

Petitioner next alleges official misconduct by law enforcement, court reporters, standby counsel, and a probation officer. (Petition (Doc. 189), Grounds Ten, Fourteen, Fifteen,

---

[15] Petitioner faults attorney Crump for failing to inform Petitioner he could testify at the hearing on the motion to suppress. (Pet'r's Mem. (Doc. 199) at 81.)  Even assuming this is so, there has been no prejudice for the reasons explained previously.

[16] In a supplement, Petitioner faults counsel for failing to "consult in person" with Petitioner about his right to seek certiorari with the Supreme Court.  (Doc. 197 at 36.)  Counsel had no obligation to consult with Petitioner "in person" regarding the filing of a petition for certiorari, but, instead, only in writing. <u>Rochelle</u>, 422 F. App'x at 278 ("This court requires that counsel inform Rochelle, in writing, of the right to petition the Supreme Court of the United States for further review."). Petitioner does not allege that counsel failed to consult with him in writing. And, as explained, Petitioner filed a petition for writ of certiorari with the Supreme Court and it was denied.  <u>Rochelle v. United States</u>, ____ U.S. ____, 132 S. Ct. 438 (2011).

Sixteen, Seventeen, Eighteen, Nineteen, and Twenty-Three.) For the following reasons, these claims lack merit.

### 1. Grounds Ten, Fourteen, and Twenty-Three

For each of the court reporters for which Petitioner alleges official misconduct, he cites a failure to record verbatim the statements by Petitioner (and others). (Id., Ground Ten, Fourteen, and Twenty-Three.) These claims are conclusory and unsupported and should therefore be denied. Nickerson, 971 F.2d at 1136.

### 2. Ground Fifteen

Petitioner alleges misconduct by his standby counsel during trial, regarding conduct toward a juror, in Ground Fifteen. (Petition (Doc. 189), Ground Fifteen.) During deliberations, the jury took a lunch break. (Doc. 177 at 44.) At the end of this break, standby counsel brought an issue to the court's attention in "an overabundance of caution." (Id. at 47.)

Specifically, standby counsel stated that he went to lunch during the break and "looked around and . . . saw no jurors there, and I walked toward the front, and about three to 4 feet away from me was [the prosecutor's] Mr. Ramaswamy's legal assistant Jessica." (Id.) Standby counsel stated "I looked at her, turned around and looked at her, and I said, in a low tone,

- 43 -

'Ram did a good job,' and I saw a gentlemen at the counter, and he was about 6 feet away. He was facing with the attendant of the store, restaurant. It's my belief that he was talking to the attendant, and right after I said, 'Ram did a good job,' Juror No. 1 turned around." (Id. at 47-48.) Standby counsel indicated that he did not believe the juror heard him and that he spoke with "Jessica" and she said "that she didn't hear what [he] said, and she was about 3 feet away, but in an overabundance of caution, I feel like now is the time to say something rather than somewhere down the road." (Id. at 48.)

The court indicated that it was not "initially troubled" because "Jessica" had only attended the trial briefly for "a few minutes." (Id. at 48.) Neither Petitioner nor the prosecutor stated they wanted further inquiry from the juror when prompted by the court. (Id.) In light of all this, the cautionary instructions the jurors had been given throughout the proceedings, and because it was not "reasonably apparent" the name "Ram" would be connected with the prosecutor, the court agreed with the parties and decided not to pursue the matter further. (Id. at 49.) This claim lacks merit for these same reasons previously articulated by the court.

### 3. __Ground Sixteen__

Petitioner next contends ATF agent Robert Elliot destroyed material video recordings. (Pet'r's Mem. (Doc. 199), Ground Sixteen.)

Elliot testified a number of times during these proceedings, including during Petitioner's suppression hearing. (Doc. 161 at 46.) Elliot was provided the 8mm cassettes and video camera taken from Petitioner during the November 2004 incident with law enforcement. (Id.) Elliot viewed the tapes and had them transferred into a DVD form. (Id. at 47-48.) At sentencing, Elliot testified that the original cassettes were ultimately destroyed. (Doc. 173 at 11.) At sentencing, Elliot explained further that this was because state charges had been resolved against Petitioner and law enforcement was unaware of the federal charges in this case. (Id. at 19-22.) Consequently, both cassettes and the video recording device were destroyed. (Id. at 21.)  This does not constitute misconduct, and beyond that there is no reason to believe these cassettes would have somehow helped Petitioner's case, and so Petitioner's claim fails.

### 4. __Ground Seventeen__

Petitioner alleges a United States Probation Officer also lied during testimony, committing official misconduct, in Grounds Seventeen. (Petition (Doc. 189), Ground Seventeen; Pet'r's Mem. (Doc. 199), Ground Seventeen.) The court addressed this contention at sentencing. (Docs. 170-171.) Specifically, Petitioner contended during sentencing that a probation officer from the United States Probation Office had never spoken with him in an effort to collect information for the presentence investigation report. (Doc. 170 at 8-10.) The probation officer was placed under oath and testified that he had introduced himself to Petitioner and then had proceeded to interview him while Petitioner was in the Alamance County Jail. (__Id.__ at 10-12; __see also__ Doc. 171 at 39-63.) The court found the testimony of the probation officer credible and the court also noted that Petitioner's representations to the contrary were sufficient to warrant a finding of obstruction. (Doc. 170 at 15-17.) Petitioner's claim is not meaningfully different now than it was at sentencing and so it fails now for the same reason it failed at sentencing.

## 5. __Ground Eighteen__

Petitioner further contends that a state law enforcement officer, Josh Thomas, destroyed material video recordings. (Petition (Doc. 189), Ground Eighteen.)  Thomas, a former High Point Police Officer, testified at Petitioner's trial regarding the May 2004 arrest. (Doc. 175 at 52.) Thomas' patrol car had a VHS dashboard recording system.  (__Id.__ at 62.)  Thomas was called by the prosecution and testified:

> Q.   And what was your practice -- what was your practice regarding dashboard videos at that time?
>
> A.   The City, there was no policy in place as far as – at that time for handling of in-car camera tapes. A rule of thumb was if you felt there was going to be a complaint or something serious, like a use of force or something of that nature, you kept the tape and logged it in evidence. But because of the amount of tapes and the cost of those tapes, if there was nothing unusual and there was no complaint filed, usually after 60 days, the tape was deleted and it was used again for a total of three times before it was destroyed.
>
> Q.   And is that what happened with this tape?
>
> A.   Yes, sir.

(__Id.__ at 63.)  Thomas testified that at the time there was nothing unusual about the stop, so after the 60 days expired, he erased the tape and used it again.  (__Id.__ at 63-64.)  Like his last claim, this claim also fails because Petitioner has failed to demonstrate any meaningful likelihood of misconduct here or

any reason to believe the tape in question would have been helpful to his case.

### 6. **Ground Nineteen**

Petitioner next contends that state law enforcement officer Gary T. Johnson lied at a suppression hearing about a crossbow discovered in Petitioner's vehicle during the November 2004 arrest. (Petition (Doc. 189), Ground Nineteen; Pet'r's Mem. (Doc. 199), Ground Nineteen.) The court has reviewed the transcript of the suppression hearing. (Doc. 161 at 35-59.) Johnson was an officer with the Guilford County Sheriff's Department in November of 2004. (Id. at 35.) He responded to a call about Petitioner videotaping prison transports. (Id. at 35-36.) Johnson was the law enforcement officer who patted Petitioner down. (Id. at 37.) Johnson testified that he did not see the crossbow in plain view in Petitioner's car until after the initial pat-down and that he had not previously been told about the crossbow. (Id. at 37, 41.) Johnson then testified that he could not see the crossbow until Petitioner was taken into custody. (Id. at 42.) He testified that another officer had not alerted him about the crossbow prior to the pat-down. (Id.)

Johnson was then shown the videotape taken by Petitioner the day of the arrest. (Id. at 54-55.) In light of the contents

of the video, Johnson explained to the court that he was
informed about the crossbow prior to the pat-down. (Id. at
58-59.) In its order denying Petitioner's motion to suppress,
the court found that, "Johnson originally testified that he was
unaware of the crossbow until after the pat-down frisk.  The
video-tape clearly shows Allen telling Johnson about the
crossbow as the two walked toward Rochelle before the frisk,
however.  When shown the video-tape to refresh his recollection,
Johnson testified that the events in the video-tape accurately
reflected the sequence of events."  (Doc. 102 at 6, n.5.)
Petitioner has failed to demonstrate any likelihood of
misconduct or perjury here, especially considering the November
2004 arrest took place nearly five years before the February
2009 suppression hearing.

### J.  **Misconduct (Grounds Nine, Thirteen, and Twenty-Two)**

For each United States District Judge involved in
Petitioner's matter, he alleges judicial misconduct. (Petition
(Doc. 189), Grounds Nine, Thirteen, and Twenty-Two.)  Petitioner
alleges that all three judges "failed to grant Petitioner the
same level of courtesy, respect, dignity, and patience provided
to" the prosecutor and his counsel and/or standby counsel.
(Id.)  A reading of the trial and hearing transcripts shows that

- 49 -

Petitioner was given wide latitude in self-representation, and was in no way disrespected or treated discourteously. Petitioner has failed to demonstrate any lack of impartiality, the need to recuse, or any form of judicial impropriety. His identical claims against all three judges are unsupported conclusory allegations and do not merit even an evidentiary hearing. Nickerson, 971 F.2d at 1136.

**K. Juror Misconduct (Ground Twenty-Seven)**

In Ground Twenty-Seven, Petitioner alleges he received a letter sent on March 26, 2009, by one of the jurors in his trial, stating that the juror and two others "harbored a prejudice towards the Petitioner" and conspired to deny him a fair trial. (Petition (Doc. 189), Ground Twenty-Seven.) This letter is on the record and the court has again reviewed it. The problem with the letter now is the same as it was previously. The letter is unsigned, does not contain an envelope, and is an obvious forgery. (Doc. 118.) The letter is insufficient to warrant any form of relief including a hearing.

**L. Motion for Extension of Time to File a Reply**

Petitioner also requests an extension of time to file a reply/supplement. (Doc. 194.) The request for an extension of time will be granted and Petitioner's reply/supplement will be

deemed timely file.  Nevertheless, Petitioner's corresponding request for discovery, transcripts, and documents/pleadings of record from the government will be denied for lack of a particularized need, for lack of good cause shown, and for lack of any material legal authority that would warrant such relief in the particular circumstances of this case.  For these same reasons, Petitioner's request that the government be penalized for failure to provide such materials, and/or that its response be struck, are also denied.

### M.   Motion for Leave to Exceed Page Limit

Petitioner next seeks leave to exceed the page limit set by local rule in his reply briefing.  (Doc. 196.)  The request is granted.

### N.   Motion to Supplement § 2255 Motion

Petitioner has also filed a motion to supplement his initial § 2255 motion. (Doc. 198.) The request is granted. The court has reviewed Petitioner's supplemental memorandum (Doc. 199) and affidavit (Doc. 200) just as it has reviewed all the pleadings Petitioner has filed in this proceeding.  None of them have merit.

**O.** **Motion for Leave to Correct Grammatical and Typographical Errors**

Petitioner has also filed a motion (Doc. 201) seeking to amend his original § 2255 motion and pleadings to reflect the correction of various grammatical and typographical errors. This motion will be granted and Petitioner's pleadings are amended accordingly. None of the Petitioner's claims or sub-claims have merit, with or without these amendments.

**P.** **Motion for Disclosure of Grand Jury Transcripts**

Petitioner has also filed a motion seeking disclosure of partial transcripts of the grand jury proceeding in his case. (Doc. 202.) Disclosure of what transpires before the grand jury is generally prohibited, with certain exceptions delineated in Rule 6 of the Federal Rules of Criminal Procedure. See In re Grand Jury Proceedings GJ-76-4 & GJ-75-3, 800 F.2d 1293, 1298 (4th Cir. 1986). The general framework for determining whether to permit disclosure is relatively simple. The party seeking discovery must make "a strong showing of particularized need for grand jury materials." United States v. Sells Eng'g, Inc., 463 U.S. 418, 443 (1983). That is, the moving party must prove that without access to the grand jury materials, "a defense would be greatly prejudiced" or "an injustice would be done." United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958). Once a

"particularized need" is demonstrated, the movant must show that the necessity for disclosure outweighs the need for continued secrecy, and that the request is structured to cover only the essential material.  In re Grand Jury Proceedings, 800 F.2d at 1298.  Additionally, federal inmates are not entitled to transcripts at the government's expense without this showing. United States v. MacCollom, 426 U.S. 317, 326–27 (1976); United States v. Hamlett, 128 F. App'x 320, 321 (4th Cir. 2005).  "An indigent is not entitled to free copies 'merely to comb the record in the hope of discovering some flaw.'"  Hamlett, 128 F. App'x at 321 (citation omitted).

Here, Petitioner has not demonstrated the requisite "particularized need."  The request is therefore denied.

**V.    CONCLUSION**

For the reasons set forth above, Petitioner's claims are without merit.  An evidentiary hearing is not warranted.

**IT IS THEREFORE ORDERED** that Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 189) is **DENIED** and that this action is dismissed.

**IT IS FURTHER ORDERED** that Petitioner's motion for an extension of time to file a reply (Doc. 194) is **GRANTED** to the

extent that Petitioner's Reply (Docs. 195, 197) is deemed timely filed and **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Petitioner's motion for leave to file a reply in excess of the page limit set by local rule (Doc. 196) is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner's motion to supplement his motion to vacate, set aside, or correct sentence (Doc. 198) is **GRANTED.** The court has reviewed Petitioner's supplemental memorandum (Doc. 199) and affidavit (Doc. 200) just as it has reviewed all the pleadings Petitioner has filed in this proceeding.

**IT IS FURTHER ORDERED** that Petitioner's motion (Doc. 201) to supplement to correct grammatical and typographical errors in his motion to vacate, set aside, or correct sentence is **GRANTED** and Petitioner's original § 2255 motion and supporting pleadings are amended accordingly.

**IT IS FURTHER ORDERED** that Petitioner's motion for disclosure of grand jury transcripts (Docs. 202-203) are **DENIED**.

A judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order. Finding no substantial issue for appeal concerning the denial of

a constitutional right affecting the conviction, nor a debatable procedural ruling, a certificate of appealability is not issued.

This the 28th day of March, 2016.

_____
United States District Judge